## CIRCUIT COURT OF CHESTERFIELD COUNTY

Rice

v.

Berkwood Corp.
and Timothy Stafford

October 9, 2001

Case No. CL00-1020

By Judge Herbert C. Gill, Jr.

On September 10, 2001, the parties, by counsel, were before the Court on the matter of defendant's Demurrer to the plaintiff's Amended Motion for Judgment as to the individual defendant, Timothy Stafford, president and supervising employee of defendant Berkwood Construction. Previously, this Court sustained defendant's Demurrer to the plaintiff's original Motion for Judgment as to Stafford and three other individual defendants on the grounds that Stafford signed the contract on behalf of Berkwood and there were no allegations against anyone in his or her individual capacity. The Court gave the plaintiff twenty-one days to replead if so advised.

The plaintiff has filed an Amended Motion for Judgment against both defendant Berkwood and, once again, Stafford. For the purposes of the demurrer, the allegations of the Amended Motion for judgment are taken as true. Both the original Motion for Judgment and the Amended Motion for Judgment allege breach of contract for failure to complete an addition to plaintiff's residence as required by contract and negligence in the performance and supervision of that contract. Stafford signed the contract, as president, on behalf of Berkwood. In doing so, he was acting as an agent with actual authority, on behalf of a disclosed principle, and did not intend to be personally bound and, therefore, is not liable for breach of contract. *Berry v. Clark*, 42 Va. Cir. 1, 5 (1996). The plaintiff, who is only suing Berkwood for breach of contract, does not contest this point. Nor is it contested that

defendant Berkwood is liable for the alleged negligence of defendant Stafford under the doctrine of respondeat superior.

In contention is the liability of Stafford for negligence. Plaintiff's Amended Motion for Judgment alleges negligence in the performance and supervision of the work required by contract, rendering the plaintiff's residence defective and unsafe. Amended Motion for Judgment, paragraphs 24-29. The defendant argued that Stafford is not liable because the plaintiff failed to allege facts to warrant a piercing of the corporate veil. It is true that if Stafford was being sued in his capacity as a shareholder, the plaintiff would be required to allege extraordinary circumstances that necessitate disregarding the corporate veil in order to prevent fraud or achieve equity. *Garnett v. Ancarrow Marine, Inc.*, 211 Va. 755 (1971). However, Stafford is not being sued in his capacity as a shareholder but as a "supervising employee." Amended Motion for Judgment, paragraph 5. Accordingly, the plaintiff need not allege facts to pierce the corporate veil because Stafford is being sued in his capacity as agent of defendant Berkwood.

Having determined that Stafford is being sued in his capacity as an agent, the issue before the Court is whether an agent's negligent performance of his principal's contract subjects the agent to tort liability.

The law in Virginia is that an agent may be sued as an individual for the negligent performance of his principal's contract. This rule, however, is subject to a notable exception. Plaintiff directed the Court's attention to *Miller v. Quarles*, in which the Supreme Court of Virginia held that an agent's negligent performance of his principal's contract subjected the agent to tort liability to the other contracting party. *Miller v. Quarles*, 242 Va. 343, 410 S.E.2d 639 (1991). In *Miller*, the agent, vice-president of a financing corporation, agreed to arrange financing for the plaintiffs. The plaintiffs delivered an escrow deposit to the agent, who then gave a portion of the deposit to a third party, who absconded with the funds. *Id.* at 346. Finding that the agent had reason not to trust the third party, the Court held him liable for his negligent performance of the contract between his principle and the plaintiff stating, "[b]oth principal and agent are jointly liable to injured third parties for the agent's negligent performance of his common law duty of reasonable care under the circumstances." *Id.* at 347, citing *Thurston Metals & Supply Co. v. Taylor*, 230 Va. 475, 483-84, 339 S.E.2d 538, 543 (1986).

This rule, however, is subject to the economic loss doctrine that states "an agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed." Restatement, Agency 2d, § 357. In *Gerald M. Moore and Son, Inc. v. Drewry*, the Supreme Court of Virginia recognized that although an agent

can be held liable for negligent performance of a contract to which he is not a party, without privity of contract, Virginia's economic loss doctrine precludes the recovery of damages based on economic loss alone. *Gerald M. Moore and Son, Inc. v. Drewry*, 251 Va. 277, 279 (1996). Indeed, subsequent interpretation of *Miller* has found the words "common law duty," noted above, to be significant. The common law duty of reasonable care applies to the safety of persons and property, not to economic losses. Va. Code § 8.01-223 provides that lack of privity is not a defense in actions for recovery of damages for injury to persons or property. This statute was enacted in derogation of the common law requirement for privity between parties and is "not to be extended beyond its express terms." *Farish v. Courion Indus., Inc.*, 722 F.2d 74 (4th Cir. 1983), aff'd on reh'g en banc, 754 F.2d 1111 (4th Cir. 1985). In fact, the Supreme Court of Virginia has "repeatedly held that an action in negligence is inappropriate to redress purely economic losses." *P & T Assocs. v. Paciulli, Simmons, etc.*, 27 Va. Cir. 405 (1992).

In *Blake Const. Co. v. Alley*, the Supreme Court of Virginia cited with approval the words of the Supreme Court of Missouri, who stated:

> Traditionally, interests which have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. Thus, where personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm. *However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of quality. This standard of quality must be defined by reference to that which the parties have agreed upon.*

*Blake Construction Co. v. Alley*, 233 Va. 31, 353 S.E.2d 724 (1987).

In *Blake*, the issue faced by the Court was whether a cause of action exists for a general contractor to recover from an architect for economic loss in the absence of privity. *Id.* at 32. In finding that Va. Code § 8.01-223 is expressly limited to injuries to persons or property, the *Blake* Court noted the case of *Bryant Elec. Co. v. City of Fredericksburg* in which the Fourth Circuit "examined cases from this Court in related areas of the law in an effort to predict our holding on this issue and correctly concluded that § 8.01-223 does not eliminate the privity requirement in a negligence action for economic loss alone." *Id.* at 34. The *Blake* Court went on to conclude that the architect had no common law duty to protect the contractor from economic loss, stating:

The parties involved in a construction project resort to contracts and contract law to protect their economic expectations. Their respective rights and duties are defined by the various contracts they enter. Protection against economic losses caused by another's failure properly to perform is but one provision the contractor may require in striking his bargain. Any duty on the architect in this regard is purely a creature of contract.

*Id.* at 35.

Accordingly, it is clear that under Virginia law, privity of contract is required to recover damages for purely economic losses. Here, since the defendant Stafford is not a party to the contract, he can only be liable for damage to the plaintiff's person or property. Resolution of this matter therefore necessitates a determination of whether or not the losses sustained by the plaintiff are purely economic.

Our determination is guided by the fact that many courts have been confronted with the problem of determining when a claim for damages crosses the line dividing purely economic losses from injuries to persons or property. *Sensenbrenner v. Rust, Orling, & Neale,* 236 Va. 419, 423 (1988). The Supreme Court of Virginia has noted that most jurisdictions equate economic losses with "disappointed economic expectations." *Id.*

In *Sensenbrenner v. Rust, Orling, & Neale,* the Court grappled with the distinction between property damage and economic loss. *Id.* In *Sensenbrenner,* the plaintiff contracted with a general contractor to build a new home with an enclosed swimming pool. The general contractor, in turn, contracted with an architect to design both the home and the enclosed pool. As a result of negligent design and supervision by the architect, the pool, which was built on fill rather than natural soil, settled, causing water pipes to break. Water from the broken pipes eroded the soil under the foundations of the pool and home, causing the bottom of the pool and the foundation of the home to crack. The plaintiffs, who were not in privity with the architect, sued the architect for negligence and argued that their claim was for damages for injury to property, for which lack of privity is no defense under § 8.01-223. The plaintiffs argued that they were seeking to recover for the cost of repairing the damage done to their home as well as the cost of placing the pool in a condition where it would cause no further damage to their home. The defendant argued that the damages constituted economic loss for which there could be no recovery in the absence of privity. *Id.* at 422. As in the matter before us, resolution of the dispute depended entirely upon the classification in which the plaintiff's claim belongs.

In finding that the plaintiffs' losses were nothing more than disappointed economic expectations, and hence, classified as economic losses, the *Sensenbrenner* Court applied products liability concepts by which economic losses are equated with disappointed economic expectations in cases where the goods purchased fail to meet some standard of quality. *Id*. at 423. Proceeding with this comparison, the Court cited *East River S.S. Corp. v. Transamerica Delaval* in which the U.S. Supreme Court held that when a product injures itself because one of its component parts is defective, a purely economic loss results. In that case, the U.S. Supreme Court expressed concern that if, in products liability cases, lack of privity concepts were "allowed to progress too far, contract law would drown in a sea of tort." *Id*. at 424, citing *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 866 (1986). The *Sensenbrenner* Court acknowledged that they, too, have expressed concern that "the limitations which apply to contract damages have led to the more or less inevitable efforts of lawyers to turn every breach of contract into a tort." *Id*. at 424, citing *Kamlar Corp. v. Haley*, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983). This concern, noted the Court, has led most jurisdictions to resist "such efforts by following the economic loss rule, limiting tort recovery against parties not in privity with the purchaser of a product to cases in which negligent manufacture or design has resulted in a product which constitutes a danger to the *safety* of persons or property *other than the product itself*." *Id*. at 424. The Court justified its comparison with products liability concepts by stating that although sales of real estate are not controlled by products liability concepts in other respects, the rule limiting recovery for economic losses to the law of contracts does apply to the sales of real property alleged to be qualitatively defective." *Id*. at 424. In concluding that the damage done to the property of the plaintiff's amounted to nothing more than disappointed economic expectations, the Court stated:

> [The plaintiffs] contracted with a builder for the purchase of a package. The package included land, design, services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective — one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.

*Id.* at 425.

Similarly, in *Rotonda Condominium Owners v. Rotonda Assocs.*, a condominium owners association sued a developer on counts including negligent repair of structural defects in five buildings. *Rotonda Cond. Owners v. Rotonda Assocs.*, 238 Va. 85 (1989). The Court determined that the plaintiffs were seeking to recover economic losses associated with the cost of repairing the defects for which the law of contracts provides the sole redress. *Id.* at 90.

After the Supreme Court allowed the plaintiff in *Miller v. Quarles, supra*, to recover from the agent for negligent performance of his principal's contract, circuit courts across Virginia found themselves faced with the question of whether *Miller* had overruled *Blake Construction, Sensenbrenner*, and *Rotonda Condominium*. The analysis that followed revealed that the escrow deposit in *Miller* was classified *as property* that was delivered to the defendant and never returned. In *P & T Assocs. v. Paciulli, Simmons, etc.*, the Circuit Court of the City of Richmond noted that, in *Miller*, "something was physically entrusted to [the defendant] and his company's possession, care, and protection. They did not simply perform services. Accordingly, a duty arose apart from the contract, albeit as a result of the contract." *P & T Assocs. v. Paciulli, Simmons etc.*, 27 Va. Cir. 405, 411 (1992).

In *Hemeon v. Petro-Tech, Inc.*, the Circuit Court of Loudoun County agreed that *Miller* did not overrule the earlier cases, stating the distinction between *Miller* and the earlier cases arises out of the delivery of property to the defendant. *Hemeon v. Petro-Tech, Inc.*, 31 Va. Cir. 421, 424 (1993). In *Hemeon*, the plaintiff, owner of a service station, contracted with a company to do certain renovation work and to provide petroleum products. That company, in turn, contracted with the defendant to do some of the work. One of the agents of the defendant, in the course of his employment, damaged underground storage tanks causing fuel oil to spill. The spill caused delays in the renovation schedule and extended the period of non-operation. To determine if privity would be a defense to the negligence action against Petro-Tech, the Court had to classify the damages as either damages to property or economic loss. In doing so, the Court noted that while the controlling policy consideration underlying tort law is the protection of and safety of persons and property from losses resulting from injury, the controlling policy consideration underlying contract law is the protection of bargained for exchanges. *Id.* at 423.

Although the *Hemeon* Court acknowledged that property was damaged, the underground tanks were damaged, and the ground was contaminated by fuel oil, it did not consider the case to be one of property damage. If it

considered it as such, "then almost all breach of contract cases could be turned into tort actions." *Id.* at 423. The Court found it significant *that the loss came during the performance of a contract and that Petro-Tech would not have been on the premises and in a position to cause the damage but for the existence of the contract.* Finding that the faulty performance of the contract caused a *diminution in value of the end product,* the Court held that the damages amounted to an economic loss for which only the law of contracts provides a remedy. *Id.* at 423.

The same distinction made by the circuit courts regarding *Miller* was also made by the Supreme Court in *Gerald M. Moore and Son, Inc. v. Drewry,* 251 Va. 277 (1996). In drawing a distinction between the case before them, involving an agent who negligently installed a furnace, and *Miller,* the Court stated that, in *Miller* "the damages sought and recovered against [the agent], although stated in terms of dollars, reflected the direct loss of specific property, the escrow deposit, not an economic loss." *Id.* at 280.

In the matter before us, the plaintiff's Amended Motion for Judgment alleges the defendant's negligence has caused their residence to be in a "defective and unsafe condition" and that the plaintiffs "sustained considerable damage to their property." Amended Motion for Judgment, paragraphs 28-29. Specifically, the plaintiff alleged that pieces of roofing tile fell from the roof installed by the defendants, exterior doors were painted improperly, dry wall was installed improperly, ceiling damage caused by a water leak over the bathtub in the addition was not repaired, a broken window glass in the addition was not replaced, and a faulty door lock installed by the defendants was not repaired. Amended Motion for Judgment, paragraphs 13-22, incorporated by Count Two.

After a review of the above cited cases, it appears likely that the plaintiff's claim is essentially one of negligent performance of a construction contract resulting in disappointed economic expectations. The damages alleged seem analogous to those suffered in the *Sensenbrenner* case, where they were deemed to be purely economic. As in *Sensenbrenner,* it appears that the bargained for level of quality has not been met, causing a diminution in the value of the whole, measured by the cost of repair. In the absence of privity, a cause of action for negligence is not available to recover purely economic losses resulting from a breach of contract. If, after the presentation of evidence, it is revealed that the losses sustained by the plaintiff were purely economic, lack of privity will be fatal to the plaintiff's claim of negligence against Stafford.

Although it will eventually be necessary for the plaintiff to overcome the economic loss rule before Stafford can be found liable, the Court is mindful

that the matter is presently before us on the defendant's demurrer. For the purposes of the demurrer, the Court finds that the plaintiff's Amended Motion for Judgment against the individual defendant Stafford is well pleaded. Accordingly, the defendant's demurrer as to the defendant Stafford is overruled and the plaintiff will be allowed to proceed against both Berkwood Construction and Stafford on the claim of negligence.